UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHERYL WINDBIEL,

        Plaintiff,

        v.                                                    Case No. 09-C-139

GROUP SHORT TERM DISABILITY,
LONG TERM DISABILITY and LIFE PLAN
for EMPLOYEES of BAY AREA MEDICAL
CENTER, et al.

        Defendants.

## DECISION AND ORDER

Plaintiff Cheryl Windbiel was employed by Bay Area Medical Center ("BAMC") in Green Bay, WI when she developed what doctors diagnosed as an allergy to latex. Plaintiff then filed for short- and long-term disability benefits under BAMC's employee welfare benefit plan. After review, Plaintiff's claim was denied by plan administrator Hartford Life and Accident Insurance Company ("Hartford"). Plaintiff appealed this decision administratively and her appeal was denied. Plaintiff then filed an ERISA complaint seeking review of Hartford's denial, and the Defendants have moved for summary judgment. For the reasons given below, their motion will be granted.

**I.    Background**

Plaintiff Windbiel was employed by BAMC from 1988 to 2007. Windbiel began her employment as a nurse, but after displaying signs of latex sensitivity in 1996 she was reassigned to a series of different positions. Most recently she worked as a volunteer coordinator, a position requiring her to manage some 400 volunteers and work in different areas of the hospital. Plaintiff

reports continued and increasing sensitivity to latex, and has been hospitalized twice for breathing difficulties she associates with the latex allergy.

A medical history interview indicates Windbiel was first diagnosed with an allergy to latex in 1995 and 1996. This diagnosis was supported by a positive latex antibody test. Windbiel continued to report symptoms of a latex allergy in the following years, though the records indicate a substantially reduced presentation of symptoms following her relocation to a position with less latex contact.

Things seemed to come to a head in 2007, however. On March 9, 2007, Windbiel visited the ER with complaints of respiratory difficulties. The treating physician diagnosed "bronchiospasm secondary to latex allergy after exposure to carpet glue at work." (HART000125)[1]. The reported symptoms and reaction to latex continued, and in November 2007 Windbiel was admitted to BAMC for inpatient treatment. Follow-up allergy "RAST" tests (radioallergosorbent tests) in November 2007 were negative for latex allergy, however, though Windbiel's treating physician continued to characterize Windbiel's latex sensitivity as severe and life-threatening. Following her hospitalization Windbiel resigned her position, and in 2008 she applied for long-term disability benefits.

In the initial denial of benefits the plan administrator cited to the language of the policy, and explained that the claim would not be paid because Windbiel did not meet the plan definition of "Permanently Disabled." The policy defined permanently disabled as being "prevented from performing one or more of the Essential Duties of Your Position." (HART000020.) The policy language explains that the definition of "Your Position" is the "occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job you are performing for a

---

[1] The administrative record is attached to the Affidavit of Eric. C. Tostrud.

specific employer or at a specific location." The plan administrator determined that the disability as stated was insufficient to preclude Windbiel from performing her job (volunteer coordinator) as it is recognized in the general workplace, and her claim was denied.

During a parallel claim for workman's compensation insurance the insurer referred Windbiel's file to an outside physician for review. This physician, Dr. James Foster, determined that Windbiel's affliction did not substantially interfere with Windbiel's ability to perform her job. Dr. Foster also called into question the very existence of the latex allergy reported. Though Dr. Foster acknowledged the existence of a positive test after receiving additional records, he maintained his position that the plaintiff's medical condition did not preclude her from performing the duties of her profession. (HART000466-67.) Based on the earlier findings, Dr. Foster's review, and another independent medical review by a Dr. Campo, Windbiel's appeal was denied, largely on the basis that the medical record did not support the existence of a latex allergy. Windbiel then filed this action under the civil enforcement provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.§ 1132(a)(1)(B).

## II. Analysis

Summary judgment is proper if the record establishes that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. "In ERISA cases, denials of benefits are reviewed de novo unless the plan at issue gives the plan administrator discretion to construe the policy terms. Where a plan administrator is given discretion to interpret the provisions of the plan, the administrator's decisions are reviewed using the arbitrary and capricious standard." *Wetzler v. Illinois CPA Soc. & Foundation Retirement Income Plan,* 586 F.3d 1053, 1057 (7th Cir. 2009). Here, the benefit plan stated clearly that "The Plan has granted

the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." (HART000024.) The policy names Bay Area Medical Center as the Plan Administrator, and provides that "the plan is administered by the Plan Administrator with benefits provided in accordance with the provisions of the applicable group plan." (HART000025.)

### A. Hartford's Denial of Benefits

The plan administrator based his initial denial of benefits on the language of the policy, as well as the medical evidence made available by the plaintiff. The administrator's key conclusion was that Windbiel did not have a disability as defined in the policy. Under the Hartford policy, disability is defined as an inability to perform one or more of the "essential duties of your occupation." (HART000020.) A beneficiary's occupation is defined "as it is recognized in the general workplace. Your Occupation does not mean the specific job you are performing for a specific employer or at a specific location." (HART000023.) In her letter denying benefits, the administrator stated that even though Windbiel may no longer have been able to perform her job in the hospital setting (due to her latex allergy), her job as a volunteer coordinator could be performed in a number of non-hospital settings where there was little or no exposure to latex. (HART000355.) As such, she could still perform all the essential duties of her occupation.

Windbiel appealed. Hartford retained a consultant physician who reviewed the medical record and contacted Windbiel's treating physicians. The consultant, Dr. Campo, concluded that it was unlikely that Windbiel had a latex allergy given her two recent negative latex allergy tests. Blood work also suggested to Dr. Campo that Windbiel was not allergic to latex. (HART000104.) He suggested instead that she could have a mild reactive airway disease, but this would not preclude her from working in any capacity. "In light of the negative RAST testing, there is no medical

evidence that would support the notion that avoidance of latex would make any difference in the claimant's symptoms," he concluded. (*Id.*) Because her airway disease had moderated as of her most recent physician appointment, and because the record did not support a diagnosis of latex allergy, Dr. Campo concluded that Windbiel maintained the ability to do her job.

### B. Hartford's Denial was neither Arbitrary nor Capricious

Plaintiff's principal argument is that Hartford "moved the goalposts" when it based its denial of the appeal on its conclusion that Plaintiff had not established an allergy to latex. Because this reason was not contained within Hartford's original denial of benefits, she argues, Hartford was not justified in relying on this additional rationale because Windbiel was never alerted to the fact that her latex allergy was being called into question. Had she known, she could have submitted additional medical information in support of her claim. Windbiel cites cases from this Circuit and elsewhere that stand for the principle that a plan's *post hoc* argument to support a denial of benefits cannot justify the administrator's decision if that was not actually the administrator's original rationale. The cases Plaintiff cites, however, involve new arguments advanced during litigation in federal court, not during the appeals process itself. *See, e.g., Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 696 (7th Cir. 1992) ("even if this might be a reasonable interpretation of the provision, there is no evidence that this interpretation of the plan was espoused by the administrator or by TLJ at the time Mr. Halpin's benefits were terminated.") As such, they do not stand for the principle that a plan administrator is forbidden from marshaling and considering new evidence once the claimant has appealed the initial denial.

Even so, cases from other circuits at least suggest that a reviewing court must focus only on the reasons contained in the plan administrator's *initial* denial of benefits. *See Hall v. Metropolitan Life Ins. Co.,* 259 Fed. Appx. 589, 593 (4th Cir. 2007) (collecting cases). These cases note that the

purpose of the plan appeals process is to allow the claimant to engage in a meaningful dialogue with the plan administrator rather than being "sandbagged by post-hoc justifications of plan decisions." *Abram v. Cargill, Inc.,* 395 F.3d 882, 886 (8th Cir. 2005). Notably, however, the Eighth Circuit has backtracked from *Abram* in *Midgett v. Washington Group International Long Term Disability Plan,* 561 F.3d 887, 893-896 (8th Cir. 2009). In *Midgett,* the court concluded that claimants did not need to be apprised of every piece of information the administrator considered during the review process, and claimants need not be afforded the opportunity to respond to adverse medical opinions the administrator may have obtained on its own. In other words, the plan administrator is entitled to rely on its own medical investigation it conducts during the appeals process, even if the investigation produces new information and even if the claimant is not alerted to the existence of the new information.

Although the Seventh Circuit has not apparently confronted the issue directly, it seems unlikely it would adopt the Plaintiff's argument that an administrator is forbidden from considering additional medical information during the appeals process. In *Mote v. Aetna Life Ins.,* for example, the plan administrator considered completely new evidence during the appeals process. 502 F.3d 601 (7th Cir. 2007). There, the claimant appealed her denial of long-term disability benefits, and during the appeals process the plan's outside physician consultant initially agreed with the claimant's own doctors that she was disabled due to fibromyalgia. The plan had hired a private investigator who videotaped the plaintiff conducting everyday chores and seeming otherwise healthy and able to work, however, and when the consulting physician viewed the video he changed his mind and concluded that she was not disabled. *Id.* at 605. The plan then affirmed its denial of benefits partly on that basis.

Clearly the medical and investigative evidence arose in *Mote* only at the plan's initiative and only during the appeals process. It was new information obtained without input from the claimant (except unwittingly). The plan, nevertheless, was entitled to consider such evidence in the course of its benefits determination: "the Plan did not act improperly when it looked to, and credited, evidence that conflicted with Mote's treating physicians' opinions as part of its deliberative process in evaluating her claim." *Id.* at 607. The plan in *Mote* did not "move the goalposts" – it merely used all the information it had at its disposal in making its determination. That is what happened here.

But even if the plan did violate proper procedure in relying on a new rationale for affirming the appeal, that does not mean Windbiel wins. The courts that would find a procedural violation under these circumstances require only that the district court consider the violation as one factor in determining whether the plan administrator acted arbitrarily. *See, e.g., Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 974 (9th Cir. 2006) ("an administrator that adds, in its final decision, a new reason for denial, a maneuver that has the effect of insulating the rationale from review, contravenes the purpose of ERISA. This procedural violation must be weighed by the district court in deciding whether Alta abused its discretion.") Here, Windbiel merely makes a *pro forma* argument that she was prejudiced by the plan's new rationale on appeal. She does not explain what new information she might have provided the plan or identify any other information the plan administrator lacked. As noted above, the plan physicians' review was thorough and its conclusions were based on multiple negative tests for latex allergy, as well as the fact that some of her symptoms were triggered by exposure to materials that did not contain latex. Dr. Campo's conclusions dovetailed with the conclusions of the worker's comp consulting physician, who noted that many of the Plaintiff's reported symptoms did not correspond to an allergy to latex. For example, two of the

most recent incidents in 2007, both of which precipitated hospital visits, involved laying carpet. In March Windbiel developed shortness of breath after encountering hospital workers laying carpet (HART000126), and in November she was laying the carpet herself in her home. (HART000274.) The consulting physician who reviewed her file for worker's compensation benefits was unable to find any link in the medical literature between carpet installation and latex allergies. More importantly, he investigated the kind of carpet and adhesive Windbiel actually installed, and he found that neither one contained natural latex, which is the trigger for a latex allergy. This report was reviewed by Hartford's plan administrator and was part of the administrative record. (HART000354.)

In considering this evidence, the administrator was not acting arbitrarily or capriciously. Hartford was entitled to conduct a medical review of the evidence, and its conclusions were based on a thorough and extensive review of the record. When the plan administrator concluded that the basis underlying Windbiel's disability claim – the latex allergy – was not supported by the medical record, the plan was entitled to affirm its denial of benefits on that basis. And even if the plan committed a procedural violation by failing to include all of its reasoning in its initial denial of benefits, that alone does not support a conclusion that it acted arbitrarily. Accordingly, the plan's motion for summary judgment is **GRANTED** and the case is dismissed.

Dated this   7th   day of July, 2010.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge